UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>VS.                                          )<br>)<br>)<br>CHRISTOPHER ASSELIN            )<br>    Defendant.                          )<br>_____ ) | Crim No. 04-30033-MAP |

MOTION TO MODIFY CRIMINAL JUDGMENT

Now comes the defendant Christopher Asselin and asks this Court to modify the Criminal Judgment that issued in the instant case. In support hereof the defendant states as follows:

1. On or about January 24, 2007 this Court entered Judgment against the defendant, Christopher Asselin. *A copy of the Judgment in a Criminal Case is incorporated herein and designated Exhibit 1*.

2. One aspect of the Criminal Judgment was that the defendant Christopher Asselin pay restitution in the amount of $140,685.45. See *Exhibit 1, p. 4 of 11*.

3. In conjunction with the Restitution Order, the Court ordered that "the defendant shall make a lump-sum payment of $140,685.45 which is due within the next ninety days." *Exhibit 1, p. 5 of 11, under the heading "Restitution:"*

4. The Restitution amount was determined by calculating the "equity" the defendant and his wife, Merylina Asselin, had in their marital home at 28 Bowles Park in Springfield.

5. As explained to the Court at the time of the sentencing hearing, the defendant and his wife expected to obtain a mortgage on the family residence and extract

the equity in the real estate to pay the restitution. This was expressed as the predicate for the need for at least 90 days to pay the restitution.

6. Although not specifically articulated at sentencing, but believed to be apparent from the financial statement provided by Christopher Asselin for the purpose of the preparation of the PSR, the defendant was not employed, had no savings and had no other assets from which to obtain the anticipated Restitution, except the equity in his house.

7. Christopher Asselin (and, through him, Merylina Asselin) also advised the Probation Officer who prepared the PSR that Merylina Asselin was working multiple jobs and that Christopher was unable to find gainful employment because of his impending incarceration. The Officer was also informed that Merylina Asselin had been previously suspended from her job when she was indicted and, as a result of the (deferred) disposition she received in this case, expected to return to work and obtain her back pay from the date of her suspension.

8. At the time the defendant Christopher Asselin decided to plead guilty in the instant case, both he and his wife, Merylina Asselin, understood that Christopher would be incarcerated. Also, the Asselins were keenly aware that there was a 'forfeiture feature to his plea agreement'. Since it was part of a "global plea agreement" and other members of his family were negotiating or had negotiated terms within the contours of the glodal agreement concerning the ability to obviate the forfeiture of the family home by paying the equity in such real estate as a substitute to forfeiture, Christopher Asselin and Marylina , expected that he would receive the same benefit and would be allowed to pay the equity in his house as payment of his Restitution obligation.

9.      Expecting that they would be allowed to save their family home by making a monetary payment in lieu of forfeiture, the Asselins assessed their financial status and understood that the principle resource on which they would need to draw in order to pay the Restitution Order, thereby avoiding loss of the family residence, is Merylina Asselin's entitlement to back pay.  It is both a direct source of funding and potential collateral for a loan.

10.     Christopher Asselin and Merylina Asselin both believed that the income Merylina received from the jobs she was presently working would be insufficient to justify the amount of the mortgage necessary to pay the Restitution Order, but, they both reasonably believed that the pay Merylina would obtain from the job to which she would be reinstated and the lump-sum payment of her back wages would be sufficient to obtain the necessary mortgage.

11.     Marylina Asselin's entitlement to the back pay is statutory.  She was suspended from her position as a guidance counselor at Chicopee High School on August 19 (*Exhibit 2*).  That action was expressly taken under G.L. c. 268A, §25 and was based on her indictment in this matter.  *Id*.  The last paragraph of that statute provides:

> If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement.

12.     On October 2, 2006, the proceedings against Marylina Asselin terminated with the entry of a Pretrial Diversion Agreement.  *A copy of the Docket Entries in this*

*case are incorporated herein by reference and designated Exhibit 3, See Exhibit 3, Document# 293. The document is also appended hereto as Exhibit 4.*

13. Christopher Asselin and Marylina Asselin both take the position that the disposition she received in this case meets the requirements of the statute requiring her reinstatement and back pay.

14. Marylina Asselin made a demand for reinstatement on November 1, 2006. *A copy of the Request for Reinstatement is attached as Exhibit 5.*

15. Notwithstanding that demand and the mandatory language of the statute, Chicopee and its school department have not yet restored Marylina Asselin to her position or paid her the two and a half years compensation already due her. *A copy of Marylina Asselin's Pretrial Diversion Agreement is incorporated herein by reference and designated Exhibit 6.*

16. Marylina Asselin and the Chicopee School Department are in active discussion about those matters – reinstatement and back pay -- and the City has not taken the position that it is not obligated to reinstate and make Marylina Asselin whole. Its lawyers have intimated, however, that they may assert that the demand is not "ripe" until the eighteen month period set forth in paragraph 12 of the Marylina's Disposition Agreement has run. That would run in or about March or April, 2008.

17. Without either Marylina's reinstatement to her prior position or the receipt of her back pay, the Asselins do not have the financial ability to pay the restitution at this time.

18. As the time to pay the restitution was running out, and the City of Chicopee had not made a decision regarding Marylina's reinstatement, Christopher

Asselin tried to make interim arrangements by seeking a loan, secured by the family home, from a friend. On or about February 8, 2007, Christopher Asselin was advised that the individual who had originally indicated he would be able to make the loan, informed Christopher Asselin that he was now not in a position to make the loan. *A copy of the email to Christopher (and forwarded to counsel) is attached as Exhibit 7.*

WHEREFORE, Christopher Asselin asks that the Criminal Judgment in his case be amended to modify when the Restitution must be paid to either (1) a date 21 days after the date the City of Chicopee pays Marylina Asselin the back wages which she is entitled, or (2) 60 days after Marylina Asselin is reinstated to her position at the Chicopee School Department and can realistically apply for a conventional mortgage .

        Respectfully submitted,
        Christopher Asselin, defendant
        By his attorney,

        /s/ William J. Cintolo

        _____
        William J. Cintolo, BBO# 084120
        COSGROVE EISENBERG & KILEY
        One International Place, Suite 1820
        Boston, MA 02110
        617.439.7775
        617.330.8774 (fax)
        WCintolo@AOL.COM (email)

Dated: February 9, 2007